VIRGINIE TERNANT, Natural Tutrix of the Minor Children of Vincent Ternant, deceased, *v.* EVARISTE BOUDREAU.

The provisions of the ancient laws in force in this State concerning the distinction of things into holy, sacred and religious, and the nature and inalienability of those things, having been abolished by art. 447 of the Civil Code, those mentioned in the 5th Partida, law 15, title 5, as religious, sacred, or holy, may now be alienated as any other property.

Ornaments of gold and precious stones deposited in a tomb with the body of the deceased, are corporeal things, (C. C. 451,) susceptible of ownership, (C. C. 480,) subject to be taken possession of by the rightful owner, the heir of the deceased, and to be alienated by him.

A sale by the heir of all the moveable and immoveable property of a succession, and of all the rights which he has or may have thereto, places the vendee in the situation in which the heir stood at the death of his ancestor, and entitles such vendee to claim articles of gold and precious stones deposited in the tomb of the ancestor. It is the sale of a succession, which includes all the rights and obligations of the deceased as they existed at the time of the death, or which have since accrued, or may subsequently arise, without exception. C. C. 869, 870. Such arti-

clrs are an integral part of the inheritance, and the heir cannot claim them against the vendee of the succession, on the ground that the latter had no intention, at the time of the sale, of purchasing, nor the former of selling them.

APPEAL from the District Court of Pointe Coupée, *Deblieux,* J.

*L. Janin,* for the appellant. The only question in this case is, whether the articles found in the tomb of the defendant's mother, were comprehended in the sale of his hereditary rights. That they were, see Troplong, Vente, vol. 2, No. 961. Such a sale conveys not only the actual, known property, but all contingent and unknown rights. The articles so found were ordinary property, not sacred or holy. Civil Code, art. 447.

*T. J. Cooley,* for the defendant. The act of sale is but the evidence of the contract between the parties; the contract or agreement being the substance.

The contract or substance must be sought in the mutual, or common intention of the parties, rather than in the literal sense of the terms used in the act of sale. Civil Code, art. 1945, 1954. Pothier, Obligations, part 1, chap. 1, Nos. 85, 86, 98. Duranton, vol. 10, Nos. 505, 506, 507, 510. Merlin, Diction. verbo, Convention, § 5 and 7 première règle.

Equity and usage serve to supply incidents or stipulations to contracts. Civil Code, art. 1959, 1960.

A jewel placed in a tomb with a dead person, should be considered as out of commerce, and so destined to be; and as not susceptible of sale. Moreau and Carleton's Partidas, vol. 2, p. 670. Code of 1808, p. 348, art. 16. Civil Code, p. 378, art. 2423. Toullier, vol. 6, No. 157, et seq. Troplong, Vente, No. 222.

SIMON, J. The present action was instituted under the following facts and circumstances, detailed in the petition, and all admitted in the answer: Dorothée LeGros deceased, the late wife of Vincent Ternant, having been interred in a brick tomb, constructed in the grave yard attached to the church of St. François of Pointe Coupé, all her jewelry, consisting of diamonds, set in various manners, and other ornaments in gold, were put into her coffin. It appears that on the night of the 17th of January, 1843, certain individuals named Conner, forcibly broke into the tomb, opened the coffin, and took therefrom the greater part of the jewelry. While attempting to sell it, they were arrested, and indict-

ed for larceny, before the Criminal Court of New Orleans. On being arraigned, Adolphe Conner pleaded guilty, and was sentenced to four months imprisonment. A considerable portion of the jewelry was found on the person, or in the possession, of Conner, and surrendered by him; and the jewelry so received was put into the possession of the Clerk of the Criminal Court, with directions, from the Judge of the said court, to deliver the same to the party who should show title thereto.

The defendant, who is the only child of Madame Ternant, claims the jewelry as sole heir of his mother; and the plaintiff, the widow of the late Vincent Ternant, and natural tutrix of his children and heirs, claims it by virtue of a purchase of the defendant's hereditary rights, made from him by her deceased husband.

The evidence shows, that Dorothée LeGros married Vincent Ternant in February, 1827, and made a marriage contract; that she died in 1835, and on the 26th of August of that year, the defendant sold all his hereditary rights to his stepfather by a notarial act, on the terms of which, it is contended by the plaintiff's counsel, the decision of this cause depends. This act shows, that the defendant sold "*tous les droits, prétensions, noms, raisons et actions, appartenant et qui pourront appartenir audit sieur vendeur dans la succession de feue dame Dorothée LeGros*, décédée épouse dudit sieur Vincent Ternant, et mère dudit sieur vendeur, *lesdits droits consistant principalement en ses appêrts dotaux*, tels qu'ils sont énumérés au contrat de mariage, entre ladite feue dame Ternant et ledit sieur son mari, suivant acte au rapport de feu F. Dormenon, en date du 13 Février, 1827; ledit sieur vendeur *transférant toutes les propriétés mobilières et immobilières, argent, et autres actifs mentionnés audit acte*, comme aussi *tous les droits et prétensions, que peut avoir ledit vendeur, en vertu dudit contrat de mariage*, s'en dessaisissant en faveur dudit sieur acquéreur, et lui donnant en outre *bonne et finale quittance de tous autres droits qu'il pourroit exercer contre lui pour raison du mariage*," &c.

The price or consideration of the purchase was a sum of $30,000, payable in five equal instalments, "au moyen de quoi, le sieur vendeur *cède et transporte au sieur acquéreur tous les droits, noms, raisons, actions, et priviléges et hypothéques géné-*

*ralement quelconques, qu'il a et peut avoir et est habile à exercer en sa qualité susdite contre toutes personnes et toutes propriétés qu'elles puissent être, pour par lui faire et user desdits droits, et se mettre en possession de toute propriété mobilière et immobilière dépendante de ladite succession, comme de chose à lui bien et légitimement appartenant en vertu des présentes,"* &c.

The price was paid according to the terms of the contract, and on the 5th of June, 1838, the defendant gave a final notarial receipt to Ternant for $30,000, being the price of " *la vente des droits succesifs du sieur, comparant en sa qualité d'héritier de feue Dorothée Le Gros, sa mère,*" &c.

It may be proper also to remark that the marriage contract alluded to in the sale of the hereditary rights, stipulates a separation of property and contains an inventory and estimation of the property of the wife, among which we find this article : " *Les hardes, linges, habits, bijoux à l'usage &c., estimés ensemble, $2000,*" and another clause that in case of the dissolution of the marriage, " *quant aux habits, linges, hardes et bijoux à l'usage, &c., la future épouse aura la faculté de les reprendre en nature,*" &c.

The record also shows, by the admissions of the parties, that the jewelry and diamonds mentioned in the plaintiff's petition were the separate property of Madame Ternant, *previous to her marriage with Ternant,* or were given to her at the time of her said marriage ; that the tomb in which the remains of the defendant's mother lie, is not protected in such a manner as to prevent the breaking of it, if the jewelry in contest should be replaced therein ; and that it would only be a temptation to evil doers to break open the tomb, &c.

The jewels left in the possession of the Clerk of the Criminal Court, consist of the following articles, to wit ; a gold chain, a gold buckle, a pair of diamond earrings, two diamond rings, a gold ring, (*alliance*,) two gold rings, two broken rings, and six small diamonds ; and the jewelry in the possession of the defendant, found in the tomb after it had been broken open, and when he caused the tomb to be repaired, consists of a diamond necklace.

The inferior court rendered judgment in favor of the defendant,

declaring him to be the owner of the above articles of jewelry; and from this judgment the plaintiff has appealed.

The only question presented in this case, is, to whom do the jewels in controversy belong?

On the part of the plaintiff, the sale of the defendant's hereditary rights above recited, general in its terms, is relied on as giving the vendee a clear and indisputable title to the property.

And, on the part of the defendant, it is contended, that the jewels in dispute never were intended to be sold by him to Ternant; that the latter never intended to buy them; that the substance of the contract must be sought in the mutual or common intentions of the parties, rather than in the literal sense of the terms; and that the objects placed in the tomb of the deceased, should be considered as out of commerce, and so destined, and not susceptible of sale.

The last ground of defence is clearly untenable. By art. 447 of the Civil Code, the provisions of the ancient laws concerning the distinction of things into things holy, sacred, and religious, and the nature and inalienability of these things, were abolished; and therefore the things mentioned in the law 15th, tit. 5, Partida 5, as being religious, sacred or holy, may now be subject to be sold or alienated as any other kind of property. It is true, however, that the jewels which were put in the tomb of the defendant's mother, were destined to remain there; and that although they never became a part of the monument, it may be fairly presumed if they had not tempted the covetousness of evil doers, they would never have been disturbed. They may have been placed there in compliance with the last wishes of the deceased, or from other causes which it is unnecessary to inquire into; but although concealed in the bottom of a grave, and perhaps protected only by the respect which the living are naturally disposed to bear to the ashes of the dead, it cannot be denied, that they were corporeal things (Civil Code, art. 451) within the domain of ownership, (Ib. art. 480,) and therefore subject to be taken possession of by the rightful owner, (the heir of the deceased,) and to be by him sold or alienated. If, however indecorous, and even infamous, the act might have been, the heir of the deceased had claimed those jewels, or taken them in possession, who could, under our laws, have

disputed his right? The right of ownership belonged to him, and no one could have prevented him from exercising it in its fullest extent. The condemnation of the thief by the Criminal Court, shows also, that the jewels were considered there, as *the personal goods of another.*

With this view of the character of the property in dispute, it is clear, from the facts disclosed by the record, that the jewels were the property of the defendant at the time they were put in his mother's grave, and that they never ceased to be so, even while they remained in the tomb, unless they be considered as included in the sale of hereditary rights made by the defendant to Ternant. This is the main, nay, the only question in this case.

The sale above recited, comprises all the rights and pretensions of the defendant to the inheritance of his mother's estate, all the property moveable and immovable, *toutes les propriétés mobilières et immobilières,* left by the deceased, and extends even to contingencies and derivative rights. Nothing is excepted, and it puts the vendee in the same situation in which the heir stood at the time of the death of his ancestor. It is the sale of a succession, (hérédité,) which, according to arts. 869 and 870 of the Civil Code, not only includes the rights and obligations of the deceased, as they existed at the time of his death, but all that has accrued thereto since its opening; or, in other words, the right by which the heir can take possession of the estate of the deceased such as it may be. Troplong, vol. 2, No. 961, says that such a sale "comprend non seulement ce qui existait au moment que l'hérédité s'est ouverte, mais encore tout ce en quoi elle consistait à l'époque où la vente s'effectue. On doit y faire entrer non seulement ce qui a augmenté l'hérédité, mais encore ce qui doit l'augmenter un jour; *non solum quod jam pervenit, sed et quandoque pervenerit.* Dig. L. 2, § 4, De Hæred. vel. Act. Vend. Troplong proceeds: " Enfin, le vendeur doit tenir compte a l'acheteur des effects de la succession, qu'il a aliénés avant la vente de l'hérédité, car *à moins de clauses contraires, la vente de l'hérédité englobe tout ce que cette hérédité embrassait à l'instant même où elle s'est ouverte.*" See also, Pothier, Vente, No. 529, who says, " quand on vend l'hérédité d'un défunt, *on vend tout ce qui en est provenu et proviendra.*" Now, how can it be said, that the jewels in dispute

494 NEW ORLEANS,

_____

ought not to be considered as included in the sale under conside-
ration, and that they must be taken as distinct from the objects
sold, when the objects sold, are *the rights of a vendor to a succes-
sion* of which the jewels necessarily form a part ? It is urged, that
the vendor did not intend to sell, and that the vendee had no in-
tention of buying the jewels ; but they were an integral part of
the inheritance sold in a lump, though concealed in a tomb, and it
would be as correct to say, that if a purchaser of an inheritance
were, at the time of the sale, under the erroneous impression that
one of the effects belonging thereto was permanently lost or des-
troyed. the heir could subsequently claim it, on the ground that
the purchaser did not know that it existed, and had no express inten-
tion of buying it ; nay, this is exactly an analogous case. Again,
as Troplong says, " la vente de l'hérédité englobe tout ce qu'elle
embrassait à l'instant même de son ouverture," without any excep-
tion or distinction ; even the unknown or contingent rights attached
thereto or derived therefrom ; and we are unable to conclude, that
the defendant is entitled to claim and keep as his, the articles of
jewelry which form the subject of this controversy. They belong
under the sale, to the heirs of the purchaser.

It is, therefore, ordered, that the judgment of the District Court,
be annulled and reversed, and that ours be for the plaintiff, who,
as natural tutrix of her children, the heirs of Vincent Ternant, de-
ceased, is hereby declared to be the owner of the several articles
of jewelry which form the subject matter of this suit. The costs
in both courts to be paid by the defendant and appellee.