CORNELIUS VOORHIES *v.* J. A. DeBLANC, Sheriff, et als.—PIERRE J. PAVY et al. *v.* THE SAME. *

The word "immovables," as employed in Article 3256 of the Civil Code, which specifies the objects which *alone* are susceptible of mortgage was intended to embrace only such things as are immovable by their *nature*, as lands, buildings, &c.

" An action for the recovery of an immovable estate or an entire succession," although, by legal intendment considered an incorporeal immovable, is not susceptible of mortgage.

An entire succession, disregarding the elements which enter into its composition, is not an object susceptible of mortgage.

A judicial mortgage will not attach to an immovable action as distinguished from the property which is the object of the action, nor to the entire interest of the debtor in the movables, slaves and immovables which composed the active mass of a succession falling to him as heir.

APPEAL from the District Court of the Parish of St. Martin, *Dupré,* J. *M. Voorhies,* for plaintiff and appellant.  *A. DeBlanc & Fuselier* and *E. Simon,* for appellees.

SPOFFORD, J.  *Alexander Declouet* being a judgment creditor of *Jean Adolphe Dumartrait* levied an execution upon " all the hereditary rights, actions and pretentions of said *J. A. Dumartrait* in and to the property, real and personal, by him inherited, for one undivided fourth, from his father *Adrien Dumartrait,* deceased, whose succession is opened in the Parish of St. Martin,"

The property thus seized being sold, produced a fund of four thousand dollars, which *Declouet* sought to apply to the satisfaction of his judgment, by virtue of his seizure. ·

*Cornelius Voorhies* filed an opposition in which he claimed a preference on all the proceeds of this sale by virtue of a judicial mortgage upon the seized property, resulting from the registry of a judgment against *Jean A. Dumartrait* in the Parish of St. Martin, which took rank of all other claims by priority of inscription, and was sufficient in amount· to absorb the fund in court.

*P. J. Pavy & Co.* also filed an opposition. They had the eldest judicial mortgage against *Jean A. Dumartrait* recorded in the Parish of St. Mary, the parish of his domicil.

The succession of *Adrien Dumartrait* was composed of movables, slaves and immovables, in the Parish of St. Martin.  Some time after the sale of *Jean A. Dumartrait's* one fourth interest in the succession, under *Declouet's* judgment, the property of the whole succession was sold, and the relative value of the movables, slaves and immovables was thereby determined.  The value having been thus ascertained, and shown on the trial of these oppositions in the court below, the District Judge divided the fund in court into three parts having the same ratio to each other as the respective products of the movables, the slaves, and the immovables of the entire succession of *Adrien Dumartrait.*

Of these three parts, he awarded to the seizing creditor, *Declouet,* the portion corresponding to the proceeds of the movables ; to *Voorhies,* the portion corresponding to the proceeds of the St. Martin immovables ; and to *Pavy & Co.,* the portion corresponding to the proceeds of the slaves, as ascertained by the sale of the entire property of *Adrien Dumartrait's* succession.

* This case was decided at New Orleans, March 2d, 1857.

The theory upon which this judgment was based seems to have been this: that the common debtor, *Jean A. Dumartrait*, was seized at the death of his father, *Adrien Dumartrait*, of one undivided fourth of all the movables, immovables, and slaves belonging to *Adrien's Succession*, (C. C. 1214, 934, 938); that thereupon *Voorhies'* judicial mortgage attached at once to the undivided one-fourth interest of his debtor in the succession lands with their accessories, situated in the Parish of St. Martin, where his judgment was the first of record; that, at the same instant, the judicial mortgage of *Pavy & Co.* attached to the undivided one-fourth interest of the same debtor in all the slaves belonging to the succession, because they had the first recorded judgment in the Parish of St. Mary, the debtor's domicil; and, lastly, that *Declouet*, by virtue of his seizure, under Article 722 of the Code of Practice, was invested with a privilege on the undivided one-fourth interest of the common debtor in all the property of the succession, which privilege, however, was overridden, *quoad* the lands and their accessories, by the prior judicial mortgage of *Voorhies*, and, *quoad* the slaves, by the prior judicial mortgage of *Pavy & Co.*; that the fund in court represented one-fourth interest of *Jean A. Dumartrait* in all these kinds of property, composing the active mass of the succession of his father, as if the succession had been partitioned and he had taken one-fourth of each of these three classes of property in kind; that the mortgages and privileges which attached to the property itself were transferred to the fund; and that the only practicable mode of ascertaining the relative proportion of each class was to take as a basis the subsequent sale of the whole property of the succession.

From this judgment *Voorhies* alone has appealed; *Pavy & Co.* only have joined in the appeal, and they merely pray for an amendment allowing them, in addition to what they got below, one-third of the portion allotted to *Declouet* as representing the value of the debtor's interest in the movables of his father's succession.

The sole ground of the appeal by *Voorhies*, as presented by the brief of his counsel, is that *Jean A. Dumartrait's* interest in the succession was an entirety, and an immovable situated in the Parish of St. Martin, where *Voorhies* held the first recorded judgment against the heir; that his judicial mortgage, therefore, bound the whole interest of the debtor in this succession, regardless of the nature of the property belonging thereto, and entitles him to be paid by preference out of all the proceeds of the sale.

If the entire interest of an heir in a succession which has fallen to him is susceptable of mortgage, irrespective of the nature of the property which comprises the active mass of the succession, it follows, we think, that the appellant would be entitled to relief.

The question must, therefore, be solved at the threshold of the case.

Our lawgivers have thought it wise to restrain the power of hypothecating property, which is one of the rights of dominion, by the following general and sweeping rule:

"The mortgage only takes place in such instances as are authorized by law." C. C. 3250.

The mortgage right then is to be measured, in every case, by the express grant of power in our Codes and other statute books.

The following objects *alone* are susceptible of mortgage:

" 1. Immovables subject to alienation, *and their accessories* considered likewise as immovables.

"2. The *usufruct* of the same description of property with its accessories during the time of its duration.

" 3. Slaves.

" 4. Ships and other vessels." C. C. 3256.

Now it is contended that, because, in Article 463, it is declared that " an *action* for the recovery of an immovable estate or an entire succession" is " considered as immovable from the object to which it applies," such an "action" is embraced under the disignation of " immovables subject to alienation" in the first class of the objects which, according to Article 3256, are *alone* susceptible of mortgage.

Closer investigation will, we think, show this interpretation to be inadmissible.

The word " immovables" is used in various senses in the Code.

" There are things immovable by their *nature*, others by their *destination*, and others by the *object to which they are applied.*" C. C. 454.

Slaves are considered as immovables, "*by the operation of law.*" C. C. 461. It appears to us that the word " immovables," as employed in Article 3256, was intended by the lawgiver to be limited to its first and literal sense, embracing only such things as are immovable by their *nature*, as lands, buildings, &c. We are led to this conclusion, first, because to the expression "immovables · subject to alienation," is added the phrase " and their *accessories considered* likewise as immovables," an addition quite unnecessary if the word " immovables" had been used in its broadest signification, and as embracing things immovable by their destination as well as by the object to which they are applied ; secondly, because the lawgiver has added, as another and distinct class of things susceptible of mortgage, " the usufruct of the *same description of property* with its accessories during the time of its duration ;" there can be no usufruct of an "immovable action" or of "an action for the recovery of an entire succession," so these rights do not fall within the "same description of property" intended to be specified in the first class of things susceptible of mortgage ; thirdly, because "the usufruct of immovable things" is declared, by Article 463, to be considered as immovable from the object to which it applies, and, therefore, it was idle to specify such usufruct as a distinct thing susceptible of mortgage, if the words "immovables subject to alienation and their accessories" were intended to include all sorts of immovables, whether by nature, destination, or from the object to which they apply ; fourthly, because "slaves" are enumerated as the third class of things susceptible of mortgage, another superfluous specification, if the word "immovables" was used in its widest sense, in the first class, for Article 461 had already declared that "slaves, though movables by their nature, are considered as immovables, by the operation of law ; and, finally, because the enumeration of the "usufruct" of immovables as subject to mortgage, in Article 3256, and the ommission to enumerate the " action for the recovery of an immovable estate or an entire succession" demonstrate the intention of the Legislature to exclude the latter from the power of hypothecation granted as to certion specified objects alone ; *expressio unius est exclusio alterius ;* and the argument acquires additional force when we observe that, in Article 463, " the usufruct and use of immovable things," "a servitude established on real estate," and " an action .for the recovery of an immovable estate or an entire succession," had been

specified as three distinct things " *considered* as immovables, from the object to which they apply." For we cannot suppose that the lawgiver enumerated one of these things, in Article 3256, as being liable to mortgage and omitted the other two without a design.

Article 3296, which declares that: "The judicial mortgage may be enforced against all the immovables (*biens-immeubles*) *and slaves* which the debtor owns or may subsequently acquire" does not, in our opinion, enlarge the catalogue of things susceptible of mortgage, enumerated in Article 3256, if, indeed, it can be considered as embracing all of that catalogue, except ships and other vessels, upon which it is unnecessary now to express an opinion.

We therefore conclude that " an action for the recovery of an immovable estate or an entire succession," although by legal intendment considered an incorporeal immovable, is not susceptible of mortgage.

Still less do we think that an entire succession, disregarding the elements which enter into its composition, can be mortgaged. If it were so, we should be forced to the conclusion that when a succession was composed wholly of personal effects not one of which could be mortgaged, the heir could yet mortgage the totality or the ideal being which represented those effects.

If it be true that the property which enters into a succession can be mortgaged by the heir, whenever it is by its nature susceptible of mortgage, we are then led to the conclusion which the District Judge adopted, and which seems to be supported by the views of Persil, *Rég. Hyp.* I, pp. 276, 279.

But it would be going beyond what is called for by the case in the position of the parties before us, to decide whether these alleged judicial mortgages really attached to anything. For, as remarked already, *Voorhies* alone has appealed, and the other parties have not complained of the judgment in his favor for a portion of the fund. The only question he presents is whether he has a privilege upon the entire proceeds of the sale under *Declouet's* judgment by reason of his supposed judicial mortgage ; and we find that he has not, for his mortgage could not attach to an immovable action, as distinguished from the property which is the object of the action, nor upon the entire interest of his debtor in the movable, slaves and immovables which composed the active mass of the succession falling to the heir. If it attached to anything, it could only attach to the undivided interest of his debtor in the immovables situated in the parish where the judgment was recorded.

*Pavy & Co.* had recorded their judgment in the parish of the debtor's domicil, which, they say, affected his interest in the slaves by Article 3318 of the Code. As no amendment has been asked by *Declouet*, as against *Pavy & Co.* or *Voorhies*, we cannot enquire whether he was entitled to more than he obtained.

*Pavy & Co.* only complain of the allowance to *Declouet* of the entire portion the fund which represents the relative nature of the debtor's interest in the movables of the succession, and they assert that they are entitled to one-third of it. As their demand is a third opposition, founded wholly on an alleged privilege, it is difficult to see how, under the principles by which they support the correctness of the judgment in all other particulars, they can assert a privilege upon the fund representing the movables. They made no seizure, and if they have no privilege they cannot dispute the seizing creditor's right.

Nor can we, in the peculiar attitude these parties occupy towards each other, inquire into the correctness of the action of the District Judge, in tak-

ing as a basis of his estimate of what *J. A. Dumartrait* would have received of each sort of property by a partition in kind, the result of a sale posterior to the Sheriff's sale, which, as all parties agree, divested his interest in his fathers succession.

And we express no opinion concerning the validity of the seizure, advertisement and sale under *Declouet's* judgment, inasmuch as all parties are claiming the proceeds in affirmance of the sales.

Under the view we have taken of this remarkable case, we do not think the judgment between these parties can be disturbed. It is therefore affirmed with costs.

LEA, J., concurred in this opinion.

VOORHIES, J., being a party to this cause, recused himself.

MERRICK, C. J. I concur in the conclusions of Justices Spofford and Lea, although I do not think it necessary to decide the question whether an action to recover an entire succession is susceptible of mortgage or not.

In my opinion, where the heir is present and recognized, or where the creditors have accepted the succession for him by the seizure of his interest in it, the succession, even if it be under administration, must be considered as in the possession of the heir. C. C., 1985.

If the heirs reside upon the property of the succession, and enjoy the same in a state of indivision, their possession is apparent. If the property be under administration the administrator is their agent, and his possession is that of the heirs. Hence the mortgage attaches upon the undivided interest of one of several heirs in each and every immovable and slave of that succession. This mortgage, where there are several heirs, is not absolutely fixed and certain but movable, and by the mere act of partition, is transferred to the portion falling to the heir who has given the mortgage, leaving the portions of his co-heirs unincumbered. Act 1843, p. 44, sec. 2.

Now if the property, the movable, immovable and slaves of a succession are sold to effect a partition or for other cause, the mortgage attaches to the proceeds of the mortgaged property. 2 N. S. 231; 8 Rob. 97; 9 L. R. 200.

Where debts of the succession are to be paid before the rights of the heir can be ascertained, the relative rights of the mortgage and other seizing creditors of the heir will be adjusted according to equity and such principles of law as are laid down in the code.

If the right of the heir to a succession under administration were to be considered as in action only, and not in possession, and the property were to be sold by the administrator, it would follow (the mortgage not attaching to the real action) that the proceeds were free from all incumbrances in the hands of the administrator.

Again, if the real action, as for instance the right of the heir to a partition were subject to the judicial or other mortgage, the mortgage creditor would have a mortgage upon the interest of the heir in all the movables of the succession, which would be instantly defeated by the partition or the reduction of the right of action, according to Art. 463, into possession.

I think, therefore, that the mortgage attached to the interest of the heir in each of the immovables of the succession, precisely as it would have done if he had bought the like interest by a single or a succession of purchases, save only the liability of the creditor to be defeated in part by the shifting of his mort-

gage by the act of partition to immovables of less value.  C. C. 1484, Act 1843 ; 12 Rob. 450, *Succession of Pigneguy*.

VOORHIES
v.
DEBLANC.

I, therefore, concur in the decree affirming the judgment of the lower court.

BUCHANAN, J., dissenting.   The object of this litigation is the proceeds of a Sheriff's sale.

What was sold ?   *Jean A. Dumartrait's* share in the succession of his father, stated in the advertisement and seizure to be one-fourth.

What did the purchaser acquire ?   The right to recover, by action of partition or otherwise, all of *Jean A. Dumartrait's* interest in the succession of his father.   This was an entire thing—an entire estate—not to be confounded with any particular objects or articles contained in the inventory of *Adrien Dumartrait*.   See *Ternant.* v. *Boudreau*, 6 Rob. 488, in which Simon, J., as the organ of the court, took great pains to elaborate the legal distinction.   See his reasoning on pages 493 and 494.

The legality of the seizure of defendant's interest in the estate of his father is scarcely an open question, since the decisions in *Noble* v. *Nettles*, 3 Rob. 152, and *Mayo* v. *Stroud*, 12 Rob. 105.   Besides, all the parties acquiesce in its legality.

The next step in our inquiry is to ascertain what is the technical classification of the thing or object seized and sold ?   It is an incorporeal immovable. C. C. 451 and 463.   It is an action for the recovery of an entire succession. This action is indivisible, according to the authorities quoted above.   The purchaser was put in the shoes of *Jean A. Dumartrait*, as heir of his father— entitled to the advantages of such a position in the distribution of *Adrien Dumartrait's* estate—and liable to its burdens, in contribution to debts and charges.   The price of adjudication represents the estate or right which he purchased.

The Article 462 C. C. relied upon by the counsel of appellees, does not contradict the Article 463, which declares the right seized and sold to be an immovable.   On the contrary, the Article 462 refers to Article 463, as explanatory of his meaning.

Was that right affected by the inscription of *Voorhies'* mortgage ?   In answering this question, I premise that the right seized and sold had its existence in the parish of St. Martin, because *Adrien Dumartrait's* succession was opened in that parish, and because the seizure and sale was made in that parish.   And this being premised, it follows, as I conceive, that the right of action for the recovery of *Jean A. Dumartrait's* inheritance, was affected by the inscription of *Voorhies'* judgment in the parish of St. Martin.

It comes within the first class of objects susceptible of mortgage, conventional, legal or judicial, in Article 3256 of the Code, which class is as follows :

"Immovables subject to alienation, and their accessories considered likewise as immovables."

It is an immovable *subject to alienation*.   See Article 463 already quoted, and Article 2424 of the Civil Code.

Again, Article 3296 of the Code subjects to the *judicial* mortgage especially, all immovables and slaves which the debtor actually owns, (at the date of inscription,) or which he may afterwards acquire.   *Jean A. Dumartrait* acquired the immovable right of inheritance in this parish, after the inscription of *Voorhies'* judgment.   I therefore say, the right of inheritance in question,

or the action for the recovery of the inheritance (which is synonimous) was subject to the judicial mortgage of *Voorhies.*

But here we are met by the argument, that the estate inherited might consist solely of movables, in which case there would be an injustice or an undue advantage in favor of the holder of the judicial mortgage. This argument is nothing more than an ingenious attempt to withdraw from view the distinction between the entire estate or inheritance, and the particular objects which compose it.

For the purposes of this litigation, it seems to me entirely superfluous to consider what were the kinds of effects which composed the inventory of *Adrien Dumartrait.* It is very clear that *Mr. Declouet,* acting under the advice of his distinguished and able counsel, did not venture to seize *Jean A. Dumartrait's* undivided interest in any of the lands, slaves, furniture, cash, stocks, movable effects, or active debts comprised in the inventory. He seized the entire inheritance, which the law says, in terms unambiguous, in various texts, is an *immovable.* For instance, the Code treats it as an immovable in relation to prescription. By Article 1023, the faculty of accepting or renouncing an inheritance is barred by the lapse of time required for the longest prescription of the right to real estate.

It seems to me inconsistent and inadmissable that the seizing creditor should now shift his ground and say: "I stand upon my privilege, so far as the estate of my debtor, which I have acquired under my execution, consists of movables; conceding to you an hypothecary right, so far as it consists of immovables."

The judgment of the District Court, which is affirmed by the majority of this court, I cannot help regarding as a total change of the jurisprudence on this subject; yet I do not understand my brethren as declaring their dissatisfaction with the decisions in *Ternant* v. *Boudreau, Noble* v. *Nettles* and *Mayo* v. *Stroud,* and their intention to overrule those cases.

The decision of the District Judge is to the following effect: *Adrien Dumartrait's* succession realized, at an auction sale made by the heirs, without authority of justice, after the Sheriff's sale, the total sum of............$20,140 45

Add active debts or claims in the inventory, not sold at the public sale.......................................................   9,006 70

Total of *Adrien's* estate.......................$29,153 15

Of which one-fourth belonged to *Jean A. Dumartrait* and was acquired by *Declouet* at Sheriff's sale, amounting to............$ 7,288 28

The price of adjudication of the fourth interest of *Jean A. Dumartrait* in his father's succession, at Sheriff's sale, was $4,000.

Now, as the aggregate of sales of houses and lands at the auction sale was $7,720, and as the aggregate of sales of slaves at the said sale was $8,901, and as these two sums bear respectively to $29,153, total of *Adrien Dumartrait's* estate, the proportions of twenty-six and a half per cent., and thirty and a half per cent. or thereabouts, the District Judge gives about twenty-six and a half per cent. of the net proceeds of Sheriff's sale to *Voorhies;* about thirty and a half per cent. of those net proceeds to *Pavy & Co.;* and the remainder, say about forty-three per cent. of the net proceeds of Sheriff's

sale, to *Declouet*, the seizing creditor. This would be entirely correct, if the specific lands, slaves and movables had been seized and sold, and if *Jean Dumartrait's* interest in these specific objects had been adjudicated for four thousand dollars. But this has not been done; and the injustice of the distribution to *Voorhies* is apparent, when we find from the record that the fourth interest of *Dumartrait* has realized to the purchaser, *Declouet*, a profit over and above his bid, of three thousand two hundred and eighty-eight dollars; in addition to which, the judgment returns to him sixteen hundred and fifty-five dollars; making an aggregate of four thousand nine hundred dollars; while the total amount of his judgment against *Dumartrait*, with interest to the day of sale, was less than twenty-seven hundred dollars.

Thus it is seen that in the particular case, the seizing creditor who purchased the inheritance of the common debtor, loses nothing, by adjudging to the opponent the whole proceeds of the Sheriff's sale.

Were it otherwise, indeed, it would make no difference in principle. The question is, does the inscription of *Voorhies'* judgment carry a mortgage upon the property which has been sold to a larger amount than awarded by the court below. Being impressed with the conviction that it does, I am of opinion the judgment should be reversed.